# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, GALVESTON DIVISION

| | | |
|---|---|---|
| **NEIL GILMOUR, III, SOLELY IN HIS CAPACITY AS TRUSTEE OF THE VICTORY MEDICAL CENTER SOUTHCROSS UNSECURED CREDITORS' GRANTOR TRUST AND THE VICTORY PARENT COMPANY UNSECURED CREDITORS' GRANTOR TRUST,** <br> **Plaintiff** | § § § § § § § § § § | |
| | § | **Case Number:** |
| **VS.** | § <br> § | _____ |
| **H.E. BUTT GROCERY COMPANY AND H.E. BUTT GROCERY COMPANY WELFARE BENEFIT PLAN,** <br> **Defendants** | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, NEIL GILMOUR, III, solely in his capacity as Trustee of the Victory Medical Center Southcross Unsecured Creditors' Grantor Trust and Victory Parent Company Unsecured Creditors' Grantor Trust (hereinafter, "Plaintiff"), files this Original Complaint against the Defendants, H.E. BUTT GROCERY COMPANY and H.E. BUTT GROCERY COMPANY WELFARE BENEFIT PLAN (hereinafter, "Defendants"), and would show unto the Court the following:

## I. PARTIES

1.     Victory Medical Center Southcross, LP formerly known as Innova Hospital San Antonio, LP (hereinafter, "VMCS"), is a Texas limited partnership that formerly operated a hospital located at 4243 E. Southcross Boulevard in San Antonio, Bexar County, Texas 78222,

where VMCS was headquartered.  VMCS is a privately-owned entity that provided specialized-surgical-hospital services to patients in the San Antonio market.

2.      Victory Parent Company, LLC (hereinafter, "Victory Parent"), is a Texas limited liability company.  Victory Parent has its principal office located at 2201 Timberloch Place, Suite 200, The Woodlands, Harris County, Texas  77380.  Victory Parent managed a network of hospitals including VMCS, in Houston, Dallas-Fort Worth, Plano, and San Antonio markets.

3.      Victory Parent and VMCS  are the lawful Assignees and Claimants of the claims asserted herein.

4.      Due to the acts and omissions of the Defendants in the case at bar, and acts and omissions of other parties in unrelated cases, the insurance companies and ERISA plans who were paying Victory Parent and/or VMCS began to drastically reduce and/or totally refuse to pay funds due and owing to Victory Parent and/or VMCS, which resulted, in part, in Victory Parent and VMCS filing for bankruptcy under Chapter 11 of the Bankruptcy Code. VMCS is one of several debtors in a jointly administered Chapter 11 Bankruptcy Proceeding that is pending in the Northern District of Texas — Fort Worth Division, under Case No. 15-42373-rfn (hereinafter, "Bankruptcy Proceeding"). The Bankruptcy Proceeding comprises several hospital debtors, including VMCS, their general partners, and the parent company, Victory Parent Company.

5.      Plaintiff, NEIL GILMOUR, III, (hereinafter, "MR. GILMOUR"), is the Trustee of the Victory Medical Center Southcross Unsecured Creditors' Grantor Trust and the Victory Parent Company Unsecured Creditors' Grantor Trust (hereinafter, collectively, "the Grantor Trust") under the Bankruptcy Proceeding.  Pursuant to the Findings of Fact, Conclusions of Law and Order Confirming First Amended Joint Plan of Reorganization (*see* Docket Number 969), this cause of action is a Reserved Litigation Claim that belongs, together with its proceeds, to the

Grantor Trust.  Since MR. GILMOUR is the sole Trustee of the Grantor Trust, MR. GILMOUR is the proper Plaintiff in this cause of action.  Further, MR. GILMOUR has standing to bring this cause of action on behalf of VMCS and Victory Parent.  *See, e.g., Walsh v. Dively,* 2016 U.S. Dist. LEXIS 15044 at *2 (W.D. Pa. 2016) (a trust had standing to succeed to a debtor's interest as "beneficiary" or "alternate payee" under ERISA).

6.      Defendant, H.E. BUTT GROCERY COMPANY (hereinafter, "HEB" or "Plan Sponsor") is a domestic, for-profit corporation organized in the State of Texas.  HEB is a privately held supermarket chain based in San Antonio, Texas with more than three-hundred and fifty stores throughout Texas and northeastern Mexico.  In 2008, HEB was named one of the largest grocery chains in the United States and the largest privately held company in Texas.  In 2013, the year of the Master Plan at issue in this case, HEB had 35,748 employee participants in its HEB Grocery Company Retiree Welfare Benefit Plan.  Today, HEB's website boasts over 76,000 employees, presumably a large number of whom are enrolled in a similar employee benefit plan. Personal service on the Defendant Plan Sponsor may be perfected by serving its registered agent as follows:

> H.E. Butt Grocery Company
> Registered Agent: Stephen C. Mount
> 646 S. Main Avenue
> San Antonio, Texas 78204

7.      During all material times, HEB acted as the Plan Sponsor and Plan Administrator for the Defendant, H.E. BUTT GROCERY COMPANY WELFARE BENEFIT PLAN (hereinafter, the "Plan").  HEB appointed one person to serve as its official Plan Administrator: CHARLENE CURRY.  Personal service on the Defendant Plan may be perfected by serving its Plan Administrator, CHARLENE CURRY, at HEB's principal office at 646 South Flores

3

Avenue, San Antonio, Bexar County, Texas 78204, or anywhere in the state of Texas where CHARLENE CURRY may be located.

## II. JURISDICTION AND VENUE

8.      Plaintiff's claims arise *in part* under 29 U.S.C. §§ 1001 *et seq.*, Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA").  Plaintiff asserts Subject Matter Jurisdiction under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 1334(b), and 29 U.S.C. § 1132(e).

9.      Venue in the Southern District of Texas is proper [PH1]under 28 U.S.C. § 1391(b)(1), since all of the Defendants reside within the State of Texas and within this judicial district one or more Defendants reside.

10.      A corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction under 28 U.S.C. § 1391(c)(2). This Court has general personal jurisdiction over the Defendant HEB because Defendant HEB is a corporation organized and existing under the laws of Texas. Defendant HEB's principal place of business is also located within the State of Texas. Defendant HEB conducts business within the Southern District of Texas.

11.      This Court has jurisdiction over the Defendant Plan because Defendant regularly conducts business in the State of Texas, as Defendant Plan is an insurance plan offered to HEB employees working in Texas.

12.      Venue is also proper under 28 U.S.C. § 1391(b)(2) because the Plan Sponsor conducts a substantial amount of business in this judicial district, and employs and provides benefits to residents in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, such as: the collection and

contributions of premiums for the Plan, the making of promises and representations as to covered medical benefits to Plan Beneficiaries (who also work and reside in this judicial district), the provision of health care services to Plan Beneficiaries, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plan, the exchange of correspondence relating to those claims appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of Plan funds.

### III. INTRODUCTION

13.    Plaintiff asserts claims sounding in ERISA, negligent misrepresentation, promissory estoppel, and violations of the Texas Insurance Code.

14.    The Plan is a self-insured, contributory defined benefit plan, which is subject to the provisions of ERISA.

15.    Upon information and belief, HEB has delegated its discretionary authority to decide benefit claims and appeals under the Plan to a third-party commercial insurance company, Blue Cross and Blue Shield of Texas (hereinafter, "BCBSTX"), that provides third party plan administrator services (hereinafter, "TPA" or "TPA services") on behalf of HEB pursuant to an Administrative Services Agreement (hereinafter, "ASA") between BCBSTX and HEB.

16.    Since HEB delegated some of its fiduciary duties to BCBSTX under the ASA, BCBSTX was a co-fiduciary of the Plan.  At all times relevant to the allegations contained herein, BCBSTX acted as an authorized agent of the Plan and Plan Sponsor.

17.    This dispute arises out of Defendants' scheme to harm VMCS and Victory Parent Company (hereinafter, individually and collectively, as applicable, referred to as "Plan Beneficiary") by wrongfully withholding assets in a sum of $1,150,138.80 from the Plan

Beneficiary. The Defendants effectuated this goal when they "allowed" the Plan Beneficiary's total claim of $1,169,412.20 in medical services that were provided to a patient; paid $19,273.37 of that claim; and then withheld the remaining sum of $1,150,138.80 of that claim based on a concocted PPO discount for a PPO contract that **never existed**. The Defendants' acts and omissions are tantamount to a complete disregard for the Defendants' fiduciary duties as mandated under 29 U.S.C. § 1104. As delineated below, Defendants' course of conduct with the Plan Beneficiary demonstrates prohibited conduct in contravention of ERISA and the federal and state regulations promulgated thereunder (collectively hereinafter, "ERISA"). Rather than distribute Plan assets in accordance with the Plan and their fiduciary obligations and ensure prompt payment of health claims submitted by the Plan Beneficiary, as the Defendants are statutorily mandated, the Defendants appeared to have colluded with one another and their co-fiduciary to engage in statutorily prohibited acts and omissions in violation of ERISA. The Defendants have breached their fiduciary duties and statutory obligations under ERISA to such a degree as to make a mockery of their statutory obligations under the Plan.

18.     The Patient (defined below) signed an assignment of benefits (hereinafter, "AOB"), which designated and assigned the Plan Beneficiary to be a statutorily defined "Claimant" by assigning to the Plan Beneficiary all of the Patient's rights, title, and interest in all claims, causes of action, benefits, rights, insurance benefits, health care benefits, plan benefits, legal and administrative claims, and all other legal rights of recovery associated with the Patient's health insurance and/or health benefit plan. A true and correct copy of the AOB is attached hereto, identified as *Exhibit A* and incorporated herein by reference for all purposes. AOBs are routinely executed by patients receiving medical care in order to allow the provider to

step into the patient's shoes as the Plan Beneficiary and to receive payment for the medical services directly from the ERISA plan or its TPA.

19.     Through the AOB, the Patient irrevocably assigned to the Plan Beneficiary, to whose interest Plaintiff has succeeded by operation of the Chapter 11 Plan and Confirmation Order, all relevant rights, including the following: (i) the right to be paid directly by the Plan; (ii) the right to challenge and appeal the amount of reimbursement; (iii) the right to pursue litigation, including all ERISA causes of action (including breach of fiduciary claims); (iv) and the right to receive all relevant plan documents as if the Plan Beneficiary, and now the Plaintiff, was the member, participant, or beneficiary of the Plan.   The AOB is irrevocable and unrestricted.   In addition, it served to place the Plaintiff as the Patient's authorized representative, and, therefore, the Plaintiff qualifies as a claimant under the Patient Protection and Affordable Care Act, 29 CFR § 2590.715.

20.     Further, the Plaintiff has standing to bring this cause of action on behalf of the Plan Beneficiary pursuant to *Walsh v. Dively*, 2016 U.S. Dist. LEXIS 15044 at *2 (W.D. Pa. 2016), which case held that a trust had standing to succeed to a debtor's interest as "beneficiary" or "alternate payee" under ERISA.

21.     A Plan Administrator as a fiduciary owes a duty to administer the plan solely in the interest of the beneficiary or the beneficiary's designee.   However, Defendants have demonstrably failed to fulfill this duty.   To illustrate, prior to VMCS providing healthcare services that are the subject of this action, VMCS obtained from the Defendant, BCBSTX: (i) verification of insurance benefits; (ii) confirmation of no applicable exclusions to benefits under the Plan and (iii) precertification of medical necessity of the healthcare treatment.   Prior to providing medical services to the patient, BCBSTX, in its capacity as agent and co-fiduciary of

7

the Plan and Plan Sponsor, represented that the Patient had insurance coverage for an unspecified percentage of the Medicare Fee Schedule in excess of the Patient's $7,000 out-of-pocket maximum. In good faith reliance on the verification of benefits obtained from BCBSTX, VMCS provided its medical services to the Patient and timely submitted its claim for benefits to the Defendants and/or their co-fiduciary in 2013 in the sum of $1,169,412.20.

22.      Approximately one month later, Defendants' co-fiduciary, BCBSTX, issued its SSI RA Detail Report of Benefits (hereinafter, the "Report") to VMCS indicating that they would pay a fraction of VMCS's claim in the sum of $19,273.37 and that they would withhold the remainder of the claim in the sum of $1,150,138.80.  A true and correct copy of the Report is attached hereto, identified as *Exhibit B*, and is incorporated herein by reference for all purposes.

23.      The stated basis of withholding or "contractual adjustment" of the amount due to VMCS was identified in the Report by "CO45," which according to the Report means that the Plan Beneficiary had entered into a contract with an insurer and the amount of its claim exceeded its contractual limit.  This code might appropriately be used where a provider had entered into a managed-care contract with an insurer, and the provider agreed to provide services under the contract at a reduced rate in exchange for the increased patient volume that typically comes from being an "in-network" provider.

24.      Here, however, as the Defendants are well aware, there was **no** contract between VMCS and any of the Defendants or their co-fiduciaries.  VMCS had never agreed to provide services to the plan beneficiaries or the insureds of BCBSTX at a reduced or discounted contractual rate. The Defendants' concocted this phantom "contractual obligation" code in order to mask the Defendants' objective to wrongfully withhold Plan assets in a sum of $1,150,138.80 from the Plan Beneficiary and only pay a small portion of VMCS' claim.

25.     Notably, the Report acknowledges that the amount of the "allowed claim" was $1,169,412.20 (i.e., after applying the unspecified percentage of the Medicare Fee Schedule in excess of the Patient's $7,000 out-of-pocket maximum) and never disputed the reasonableness of the amount of the claim charged by the Plan Beneficiary, which was consistent with the representations BCBSTX made to VMCS prior to the medical services being provided. *See Exhibit B.*  To illustrate, the Report confirmed the amount of **"Not Covered Charges"** was **"$0.00"** and **Denied Charges"** was **"$0.00"**. The Report further confirmed that the **"Deductible Amount"** was **"$0.00"** and **"Co-Insurance"** was **"$0.00"**. *Id.*  This is significant because this Report is an admission by Defendants through its co-fiduciary and agent, BCBSTX, that the Plan Beneficiary's claim of $1,169,412.20 is fully allowable and covered under the Plan, and this admission is binding on the Plan and Plan Sponsor.  This claim has been determined; the Plaintiff is entitled to the allowable amount of $1,169,412.20.  Defendants' co-fiduciary, BCBSTX, has paid the Plan Beneficiary only $19,273.37.  The *sole basis* for refusing to pay Plaintiff the balance of the claim, which the Report demonstrates is allowable, is a supposed contractual discount that the Defendants and their co-fiduciary know *does not exist*.  The Plaintiff is entitled to an immediate recovery of the remaining, allowable amount of this claim in the sum of $1,150,138.80.

26.     Defendants' breach of their fiduciary duties and systematic breach of ERISA is further exemplified by Defendants refusal to provide documents required by 29 U.S.C. § 1166. On March 1, 2016, the Plan Beneficiary requested the Plan Administrator, specifically CHARLENE CURRY (hereinafter, "MS. CURRY"), who is an agent and co-fiduciary of the Defendants, to provide (i) a complete and duly executed copy of the 2013 Master Plan, which is the document that governs the Plan Beneficiary's claim; (ii) any amendments to the Master Plan;

(iii) the 2013 Summary Plan Description (hereinafter, "SPD"); (iv) any amendments and restatements to the SPD; (v) a certified copy of the alleged negotiated discount agreement being used to justify the "Provider Contractual Obligation" code in the Report; and (vi) the appeal procedures and documents relating to the Plan Beneficiary's claim and showing the actual basis for the adverse benefit determination and methodology used in applying that basis.

27.     Pursuant to 29 U.S.C. § 1166, the Plan Administrator has no discretion in deciding whether or not to produce the governing plan documents; he/she must produce the documents within thirty (30) days after the date of the request.  Notwithstanding this clear statutory obligation, MS. CURRY refused to produce the requested documents.  Accordingly, the Defendants and its co-fiduciary, MS. CURRY, breached ERISA's mandate to produce documents.  The Defendants knowingly, intentionally, and willfully withheld the governing documents that the Plan Beneficiary is entitled to receive under 29 U.S.C. § 1166 in order to hinder the Plan Beneficiary in its attempt to enforce its rights under the Plan.

28.     Defendants have further breached their fiduciary duties by failing to responsibly select and oversee the Plan Administrator and the third-party administrator as co-fiduciaries pursuant to 29 U.S.C. § 1105.  HEB and the Plan had actual knowledge of the misconduct of MS. CURRY and BCBSTX in wrongfully withholding $1,150,138.80 from the Plan Beneficiary, and of MS. CURRY in wrongfully refusing to produce documents to the Plan Beneficiary.  Yet HEB and the Plan chose to do nothing to protect the rights of the Plan Beneficiary.  Thus, HEB and the Plan have also breached their fiduciary duties to the Plan Beneficiary.

## IV.  **THE WRONGFUL CONDUCT**

A.  ***Background as to Self-Insured Health Plans Governed by ERISA and OON Providers***

29.      Throughout America, individuals not eligible for Medicare or Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer.  Those employers can provide health insurance on either a fully-insured or self-insured basis.  When an employer provides fully-insured health insurance, the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds.

30.      By contrast, when health insurance is offered by an employer on a self-insured basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose.  The resulting fund enjoys certain tax breaks, and is funded by the employer and/or employees who contribute premium payments.  The health care claims of the enrolled employees and their dependents are then paid with the finances of the fund.

31.      Unless exempted, self-insured health benefit plans are governed and regulated by ERISA.  Pursuant to ERISA, a self-insured health benefit plan must set forth in a written, official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.

32.      Often times, an employer (*i.e.* plan sponsor) who elects to have a self-insured health plan contracts with a third party commercial insurance company to oversee the claims processing and other administrative services.  The employer and the third party commercial insurance company, also known as the Third Party Administrator (hereinafter, "TPA"), enter into an Administrative Services Only (hereinafter, "ASO" or "ASA") contract or agreement.

33.    BCBSTX is a third party commercial insurance company that provides TPA services to many self-insured plans under ASA contracts. In many cases, in exchange for the payment of fees, BCBSTX provides claims processing and other administrative services to the plans. In the case at bar, HEB has delegated its discretionary and fiduciary duty to BCBSTX to decide benefit claims and appeals of adverse benefit determinations under the Plan. Notwithstanding this delegation, the Defendants remain fiduciaries and cannot abdicate their statutory responsibilities.

34.    Some healthcare providers enter into Preferred Provider Organization (hereinafter, "PPO") agreements with BCBSTX, thereby becoming "in-network" providers. In accordance with PPO contracts, BCBSTX's in-network providers agree to accept negotiated lower amounts for their services in exchange for a higher volume of patients that results from being part of BCBSTX's published managed care network.  Thus, when a plan beneficiary receives health care services from an in-network provider, the plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract.

35.    Since the amount owed by the plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with BCBSTX, and because the PPO contract also precludes the in-network provider from balance-billing the patient, the in-network provider's request for payment from the plan is deemed to be governed by the PPO contract, and is therefore not considered an ERISA claim for benefits.

36.    By contrast, an out-of-network (hereinafter, "OON") provider has no contracts with either BCBSTX or the plan.  It is not bound to accept the same lower negotiated rates set forth by any PPO contract or fee schedule and, by the same token, forgoes the benefits of being part of BCBSTX's published managed care network. Payments to an OON provider are

governed by ERISA and the terms of the ERISA plan under which the patient is a beneficiary. Since there is no contract between an OON provider and BCBSTX or the plan, an OON provider is free to "balance-bill" the patient for any amounts unpaid by the plan, wherein the patient may be held personally liable by an OON provider for any amounts unpaid by the plan.

37.     VMCS was an OON provider because it had no contracts with BCBSTX, with any of its BCBS affiliates, or the Plan.  As an OON provider, VMCS did not receive the benefits of any BCBSTX PPO agreement, and likewise VMCS was not subject to the limitations contained in any such contracts.

38.     Wherever a plan pays less than one hundred percent (100%) of an OON provider's claim, the plan's failure or refusal to pay the full amount of the OON provider's charges is deemed an adverse benefit determination under ERISA.

### B.     *Defendants Owe Fiduciary Duties to Plan Beneficiary*

39.     Under ERISA, Defendants must serve as trustee-like fiduciaries of the Plan Beneficiary.  As fiduciaries, Defendants must act in accordance with the Plan's governing plan documents and solely in the interest of the Plan beneficiaries (including the Plan Beneficiary) for the exclusive purpose of providing benefits to them.

40.     All of the Defendants serve as fiduciaries or co-fiduciaries for the Plan.  The Defendants empowered their co-fiduciary, BCBSTX, with discretionary authority and control over claims administration of the Plan, which included the adjudication of medical claims (along with full and fair review of appealed claims), determinations of coverage, reimbursements, and the disposition of the Plan's assets.

C.      *Background Information for Patient's Claim*

41.     The Plan Beneficiary provided healthcare services to the patient the subject of this litigation over the course of thirteen (13) days in 2013 (hereinafter, "Patient"). The Patient was a beneficiary of the Plan.

42.     Prior to providing any medically necessary healthcare services to the Patient, as part of the Plan Beneficiary's normal course of business, the Plan Beneficiary verified with BCBSTX that the Patient was a plan beneficiary of the Plan.  Through the verification process, which is standard in the industry, the Defendants' co-fiduciary, BCBSTX, affirmatively represented to the Plan Beneficiary that the Patient did have OON benefits and the expected medical procedure and hospital services were authorized as medically necessary and were covered services under the Plan. *See Exhibit C.* BCBSTX represented to VMCS that the Patient's OON benefits included an unspecified percentage of the Medicare Fee Schedule rate in excess of the Patient's $7,000 out-of-pocket maximum.  In good faith reliance on BCBSTX's verification of Patient's benefits under the Plan, VMCS agreed to provide to costly medical services to the Patient.

43.     After receiving verification of Patient's OON benefits and obtaining the signed AOB, VMCS provided healthcare services to Patient, and Patient incurred eligible and reasonable medical expenses over the course of thirteen (13) days in 2013.  VMCS then submitted healthcare claims to Defendants to be reimbursed for the services that VMCS provided to Patient in the sum of $1,169,412.20, which were usual and customary charges for the medical services provided to Patient.  In the Report, Defendants confirmed that the Plan Beneficiary was entitled to the payment of $1,169,412.20 under the Plan but for a bogus contractual discount that did not exist.

**D.    DEFENDANTS' VIOLATIONS OF ERISA**

*i.    Defendants Wrongfully Withheld $1,150,138.83 of Plan Benefits by Concocting a False Pretense for Denial*

44.    Defendants' co-fiduciary, BCBSTX, precertified the Patient's benefits under the Plan and approved the medical necessity of VMCS' services. As evidenced by the Report issued in 2013, there was no dispute as to the reasonableness of the amount of the $1,169,412.20 claim charged by the Plan Beneficiary. *See Exhibit B.* In fact, the Report confirmed that all charges were covered under the Plan, since the amount of **"Not Covered Charges"** were **"$0.00"** and the **"Denied Charges"** were **"$0.00"**. *Id.* The Report further confirmed that the full covered amount was "allowed" under the Plan since the **"Deductible"** amount was listed at **"$0.00,"** and **"Co-Insurance"** was listed at **"$0.00"**. *Id.* The Report confirmed what BCBSTX told VMCS prior to the medical services being provided to the Patient. The Report confirmed that the Plan benefits to which the Plan Beneficiary was entitled was $1,169,412.20.

45.    However, only a small portion of the claim was paid: $19,273.37. According to the Report, the majority of the claim, $1,150,138.80, was withheld as "Claim Level Adjustments" based on denial code "CO45." CMS Standard Claims Remittance Code defines "CO" as a provider contractual obligation, such as a PPO discount. As explained above, this "CO45" denial was baseless as there is not now, nor has there ever been, a contract between VMCS and BCBSTX regarding fees or a fee arrangement. It is important to note that the Plan Beneficiary's claim was not reduced by any Medicare Fee Schedule or percentage thereof, which leads to the unmistakable conclusion that after taking into account the Medicare Fee Schedule and the applicable percentage thereof, the Plan Beneficiary's entitlement under the Plan is $1,169,412.20.

46.     BCBSTX, a co-fiduciary of the Defendants, certified that no contract existed between VMCS and BCBSTX which would justify withholding $1,150,138.80 in Plan benefits from VMCS.  In 2014, BCBSTX, wrote:

> *"Your correspondence indicates that you do not agree with the payment amount. We carefully reviewed your request and have determined that the claim was processed in accordance with the terms and conditions of the member's health care benefit plan and that the appropriate allowed payment was applied.  **In addition, our files indicate that you are <u>not</u> a <u>contracted Blue Cross Blue Shield of Texas PPO provider.</u>"***

(Emphasis added.)  A true and correct copy of this correspondence is attached hereto, identified as *Exhibit D,* and is incorporated herein by reference for all purposes.  This letter is strong evidence that the Defendants actually and/or constructively knew that there never existed a contractual relationship between VMCS and any of the Defendants or their co-fiduciaries to justify the Defendants' adverse benefit determination in the sum of $1,150,138.80.

47.     Despite this clear admission from Defendants' co-fiduciary that no contract exists to justify the "contractual" reduction of the Plan Beneficiary's claim, over two years have passed and Defendants have wholly failed and refused to pay the balance of the allowed amount of the claim in the sum of $1,150,138.80.

## ii.     *Defendants Violated the ERISA Claims Procedure*

48.     29 C.F.R. § 2560.503-1 (hereinafter, the "ERISA Claims Procedure") sets forth the minimum requirements for employee benefit plan procedures pertaining to, among other things, claims for benefits by plan participants.  Pursuant to the ERISA, the Defendants are required to comply with specific notice procedures when processing claims for healthcare benefits.  The term "adverse benefit determination," as defined in the ERISA Claims Procedure, includes "a denial, reduction, or termination of" benefits and the "failure to provide or make payment (in whole or in part) for a benefit." 29 C.F.R. § 2560.503-1(m)(4).  Any adverse benefit

determination, for example, is required to contain the following information pursuant to the

ERISA Claims Procedure:

(i)    set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(i);

(ii)    identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(ii);

(iii)    describe any additional material or information necessary for the recipient to receive the benefit, 29 C.F.R. § 2560.503-1(g)(1)(iii);

(iv)    describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R. § 2560.503-1(g)(1)(iv);

(v)    advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(v);

(vi)    identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, 29 C.F.R. § 2560.503-1(g)(1)(v)(A); and

(vii)    provide all of the information regarding recipient's rights of appeal as set forth in the ERISA statute, 29 C.F.R. § 2560.503-1(h).

As explained below, the Report that the Defendants' co-fiduciary, BCBSTX, sent to the Plan

Beneficiary violated virtually every one of the above-referenced requirements under the ERISA

Claims Procedure.

49.    The Report purporting to reduce the Plan Beneficiary's claim violated 29 C.F.R. §

2560.503-1(g)(1)(i) because the reason cited for the refusal to pay covered benefits was a non-

existent PPO contract. *See Exhibits B, D.* A plan fiduciary cannot fulfill its obligations under 29

C.F.R. § 2560.503-1(g)(1)(i) by inventing the reason for denial.

50.    Defendants have violated 29 C.F.R. § 2560.503-1(g)(1)(ii) in multiple ways. For

example, the Report did not identify the Plan provision that supported the refusal to pay the Plan

benefits identified as "allowed" in the Report itself. When the Plan Beneficiary requested the

Plan Administrator to provide it with the actual Master Plan in effect in 2013 and the amendments/restatements thereto, MS. CURRY refused in further violation of 29 C.F.R. § 2560.503-1(g)(1)(ii). A true and correct copy of an undated letter from MS. CURRY to the Plan Beneficiary evidencing her refusal to produce said documents is attached hereto, identified as *Exhibit E*, and is incorporated herein by reference for all purposes.

51.     Defendants failed to adequately describe to the Plan Beneficiary the applicable Plan review procedures and time limits applicable thereto in violation of 29 C.F.R. § 2560.503-1(g)(1)(iv). MS. CURRY admits such failure in her letter to the Plan Beneficiary, when she informs the Plan Beneficiary that it could contact customer service for information regarding member appeals. *See Exhibit E.*

52.     Defendants failed to advise the Plan Beneficiary of their right to bring this civil action under section 502(a) of ERISA following the adverse benefit determination on review in violation of 29 C.F.R. § 2560.503-1(g)(1)(v). *See Exhibit E.*

53.     Defendants failed to identify for the Plan Beneficiary the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request in violation of 29 C.F.R. § 2560.503-1(g)(1)(v)(A). On March 1, 2016, the Plan Beneficiary specifically asked the Plan Administrator to provide "the relevant plan provisions on which denial is based." On March 17, 2016, MS. CURRY replied by refusing to specify what provision in the Plan or SPD the Defendants based their denial. In fact, MS. CURRY responded that Plan Beneficiary was not entitled to SPD or other Plan documents because an "Authorized Representative" form had not been filed with BCBSTX. However, neither BCBSTX nor MS. CURRY have ever provided Plan Beneficiary with a copy of this "Authorized Representative" form and one cannot be found on BCBSTX's website or other materials. Lastly, neither BCBSTX nor MS. CURRY have ever

cited the specific provision of the Plan requiring such documentation for an Authorized Representative Form nor have BCBSTX or MS. CURRY provided the SPDs so that the Plan Beneficiary may ensure compliance with these procedures. At no time have BCBSTX or MS. CURRY identified how this "Authorized Representative" form differs from the legally valid and broadly written "AOB" executed between Patient and Plan Beneficiary.

54.     Defendants failed to provide all of the information regarding the Plan Beneficiary's rights of appeal as set forth in the ERISA statute in violation of 29 C.F.R. § 2560.503-1(h).  *See Exhibit E.*

55.     Defendants have failed to establish and follow ERISA Claim Procedures as set forth in 29 C.F.R. § 2560.503-1.  The Plan Beneficiary has duly exhausted its administrative remedies as described below; however, even if it had not done so, the Plan Beneficiary should be deemed to have exhausted all such remedies due to the failure of the Defendants to establish and follow reasonable claim procedures under 29 C.F.R. § 2560.503-1.  Plaintiff is therefore entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.  *See also, Texas General Hospital, LP, et al, v. United Healthcare Servs.,* Civil Action No. 3:15-cv-02096-M, 2016 U.S. Dist. LEXIS 84082 (N.D. Tex. 2016).

### iii.     *Plan Beneficiary Relied upon Defendants' Representations and Omissions*

56.     Defendants' co-fiduciary, BCBSTX, told the Plan Beneficiary that Patient's benefits under the Plan were verified; that the projected medical treatment was deemed medically necessary; that there were no applicable exclusions; that the relevant medical services were precertified; and that Patient's OON benefits included an unspecified percentage of Medicare Fee Schedule rate reimbursement for all charges in excess of the Patient's $7,000 out-of-pocket maximum.  Since these representations were made by their co-fiduciary and agent, the

Defendants have failed and/or refused to (i) disclose the governing Plan; (ii) explain or justify their alleged PPO discount or contractual limitation; (iii) and produce any other category of requested documents as mandated by ERISA. The Plan Beneficiary has requested these documents, the Defendants and their co-fiduciary, MS. CURRY, have refused to produce same in order to further their attempt to conceal their scheme of wrongfully withholding Plan assets.

57.    The Defendants knew or should have known that the Plan Beneficiary was relying on the Defendants' representations as to verification of coverage and the procedures to pay the Plan Beneficiary as an OON provider. The representations and omissions made by the Defendants' co-fiduciary were made in the course of their business and in connection with a transaction in which they had a pecuniary interest. The Plan Beneficiary detrimentally relied upon the representation from Defendants' co-fiduciary of precertification and the representation that Plan Beneficiary would be compensated for its healthcare claim under the Plan when submitted. These acts and omissions of the Defendants and/or their co-fiduciary constitute negligently false representations.

58.    The Plan Beneficiary has been directly and proximately injured as a result of its reliance on Defendants' negligently false representations in the sum of at least $1,150,138.80. If the Plan Beneficiary had known that these representations were false, the Plan Beneficiary would not have agreed to provide the services to the Patient, and the Plan Beneficiary would not have sustained losses in the sum of $1,150,138.80.

### iv.    *Defendants' Deliberate Failure to Produce Plan Documents and to Conceal Plan Documents*

59.    Pursuant to the disclosure requirements dictated by ERISA as set forth in 29 U.S.C. § 1166 and 29 U.S.C. § 1132(c), within thirty (30) days after receipt of a request for governing documents of the Plan or any documents relating to a beneficiary's benefits, claims, or

denial of benefits, the Plan Administrator is mandated to provide said documents to the beneficiary. The Plan Administrator has no discretion to deny the disclosure of said documents. In spite of this mandate and being provided a copy of a signed AOB executed between the Patient and VMCS, MS. CURRY denied Plan Beneficiary's request for these documents. *See Exhibit E.*

60.     First, when the Plan Beneficiary asked the Plan Administrator, MS. CURRY, for a certified copy of the PPO contract executed between BCBSTX and VMCS, MS. CURRY ignored the request completely. The Defendants cannot produce a contract that does not exist. However, once BCBSTX certified in 2014, that no PPO contract existed, the Defendants should have immediately paid the "allowed benefits" under the Plan in the sum of $1,150,138.80 to the Plan Beneficiary.

61.     The Defendants have flagrantly violated the disclosure mandates. As alleged above, Defendants have either failed to or explicitly refused to disclose requested documentation in violation of the statutory requirements under 29 U.S.C. 1132 § 1132(c)(1)(B). The Plan Beneficiary has never received a copy of the Master Plan in effect at the time that VMCS provided its medical services to the Patient in 2013, nor a copy of any of the amended or restated Master Plans, despite the request of the Plan Beneficiary to the Plan Administrator. The Plan Beneficiary has not received a copy of the 2013 SPD, nor the amendments or restatements thereto. The Defendants also refused to produce a copy of all the documents showing the actual basis for the adverse benefit determination or methodology used in applying that basis in making that determination. Last, the Defendants have refused to produce the appeal procedures and other documents relating to the Plan Beneficiary's claim.

62.    Defendants' continuous breach of its disclosure requirements under ERISA and the regulations promulgated thereunder constitutes a breach of fiduciary duty for each separate failure. Plaintiff is entitled to relief from this Court for the Defendants' intentional and willful violations of ERISA and for breach of their fiduciary duties to the Plan Beneficiary, who has been directly injured by the Defendants' conduct.

    *v.*    ***Appeals by the Plan Beneficiary***

63.    The Plan Beneficiary has notified the Defendants of their many violations of ERISA and the statutory and regulatory law promulgated thereunder with multiple appeal letters and follow-ups over an approximate two (2) year period, all to no avail.

64.    To date, VMCS has submitted three separate appeals regarding its claim: two (2) to BCBSTX and one (1) to HEB. Even after receiving the Plan Beneficiary's appeals, neither of the Defendants, nor BCBSTX, have responded to the Plan Beneficiary's allegations of wrongfully withholding $1,150,138.80 from the Plan Beneficiary. Plaintiff contends that the Defendants' abject failure to deny or even respond to these allegations is tantamount to an admission by the Defendants.  Defendants, together with their co-fiduciary, continue to deny Plan benefits to the Plan Beneficiary and to fail to administer the Plan assets in the best interest of the Plan Beneficiary as they are obligated to do under ERISA.

65.    The Plan Beneficiary's administrative appeals have resulted in no documents being produced from the Defendants as described above. There is no further action that the Plan Beneficiary can take in the appeals process. Therefore, the Plan Beneficiary has completely and unequivocally exhausted any and all required administrative remedies and good-faith appeals. Any further communications or efforts by the Plan Beneficiary/Plaintiff with the Defendants in the administrative appeal process would be futile.

66.     The Plaintiff is entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. Even if the Court finds that the Plan Beneficiary has not technically exhausted the administrative appeal process, the failure of the Defendants to establish and follow reasonable claim procedures under 29 C.F.R. § 2560.503-1(l), should suffice to allow the Plaintiff to proceed with this judicial action. The Plaintiff should not be forced to follow, or punished for not following, an unrealistic appeals process that practically serves no purpose other than to dwindle down statutory limitations on the filing of legal actions.

## VI.  COUNTS AGAINST THE DEFENDANTS

67.     The Plaintiff, as a statutorily defined claimant and as the successor to the assignee of Patient's rights, is entitled under ERISA "to bring a civil action under section 502(a) of the Act following an adverse benefit determination for review" after the Plan Beneficiary has exhausted its administrative remedies.  Therefore, the Plaintiff is entitled to pursue benefit claims on behalf of the Plan Beneficiary: (i) to recover benefits due to the Plan Beneficiary under the terms of the Plan and to enforce the Plan Beneficiary's rights under the terms of the Plan; and (ii) to recover the relief against the Defendants for the Defendants' failure to supply requested information.  29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(c)(1).

68.     Plaintiff also asserts claims for negligent misrepresentation, estoppel, and Texas Insurance Code violations against the Defendants.

### COUNT ONE:

### Claims under ERISA § 502(a)(1)(b) and 29 U.S.C. § 1132(a)

69.     Plaintiff incorporates and re-alleges the allegations set forth above.

70.     Payment of this healthcare claim is required under the Plan and has been wrongfully withheld by the Defendants.  Plaintiff is entitled to payment of $1,150,138.80 from

the Plan for valid healthcare claims submitted by the Plan Beneficiary relating to the Patient. Such amount was confirmed to be the allowed amount of the Plan Beneficiary's claim pursuant to the Report issued by the Defendants. *See Exhibit B.*

71.     The Plan Beneficiary suffered harm in the sum of $1,150,138.80 and is entitled to recover the benefits due to the Plan Beneficiary relating to the Patient.

## COUNT TWO:

### Breach of Fiduciary Duty and Co-Fiduciary Liability under 29 U.S.C. § 1104, 29 U.S.C. § 1105, and 29 U.S.C. § 1106(b)(1)(d)

72.     Plaintiff incorporates and re-alleges the allegations set forth above.

73.     Pursuant to 29 U.S.C. § 1104, Defendants as Plan fiduciaries are obligated to the Plan Beneficiary to discharge their duties in the best interest of the beneficiaries, by safeguarding the Plan Assets and by responsibly selecting the Plan Administrators and the third party administrators as co-fiduciaries pursuant to 29 U.S.C. § 1105.

74.     Despite HEB's and the Plan's actual knowledge of the misconduct of MS. CURRY and BCBSTX as conveyed by the Plan Beneficiary's appeals and other communications, HEB and the Plan systematically refused to take corrective action in clear violation of Defendants' fiduciary obligations under 29 U.S.C. § 1105, for which the Plaintiff now sues the Defendants.

75.     Defendants knew or should have known that under ERISA a fiduciary with respect to a plan must not act in any prohibited transaction involving the Plan. *See* 29 U.S.C. § 1106. The Defendants engaged in a prohibited transaction by denying payment of the Plan Beneficiary's claim based on a supposed contractual limitation in a non-existent PPO agreement. If the "CO45" denial code in the Report was included inadvertently, then the Defendants fell

short of the "prudent man" standard of care mandated by ERISA. In this "inadvertent" scenario, when BCBSTX certified that no contract existed with VMCS, then the Defendants should have paid the "allowed" amount of the claim in the sum of $1,150,138.80 to the Plan Beneficiary over two years ago. This did not occur. Therefore, it must be concluded that the Defendants through their co-fiduciary deliberately included the false denial-code, thereby intentionally harming the Plan Beneficiary. Clearly, fabricating a phony code to wrongfully withhold $1,150,138.80 from the Plan Beneficiary constitutes prohibited conducted under 29 U.S.C. § 1106. In addition, since the Patient is wholly responsible for the entire amount of the healthcare claim not paid by the Defendants to the Plan Beneficiary, the Defendants' conduct is adverse to the interest of the Patient.

76.     According to the United States Supreme Court, "a breach of trust committed by a fiduciary encompasses any violation of a duty imposed upon that fiduciary." See *CIGNA Corp. v. Amara,* 563 U.S. 421 (2011). Due to the Defendants' multiple breaches of their fiduciary duties, the Plan Beneficiary and its successor, the Plaintiff, have suffered harm in the sum of $1,150,138.80, plus incidental and consequential damages. Accordingly, Plaintiff is entitled to recover damages in an amount to be proven at trial, but not less than $1,150,138.80.

**COUNT THREE:**

**Failure to Provide Requested and Required Documentation under
29 U.S.C. § 1132(c)(1)(B)**

77.     Plaintiff incorporates and re-alleges the allegations set forth above.

78.     Defendants have failed to produce the following documents as required under 29 U.S.C. § 1132(c)(1)(B) after proper request from the Plan Beneficiary: (i) a complete[12] and duly executed copy of the 2013 Master Plan, which is the document that governs the Plan Beneficiary's claim; (ii) any amendments to the Master Plan; (iii) the 2013 Summary Plan

Description (hereinafter, "SPD"); (iv) any amendments and restatements to the SPD; and (v) the appeal procedures and other documents relating to the Plan Beneficiary's claim and showing the actual basis for the adverse benefit determination and methodology used in applying that basis. In violation of ERISA, the Defendants and their co-fiduciary, MS. CURRY, have failed to produce the 2013 SPD and all of the other requested documents upon proper request. This intentional violation of ERISA disclosure mandates has caused harm and prejudice to the Plan Beneficiary, including preventing the Plan Beneficiary from fully understanding its rights under the Plan and hindering it from pursuing those rights.

79.     Defendants' failure to comply with the Plan Beneficiary's requests for information pursuant to 29 U.S.C. § 1132(c)(1)(B) triggers a penalty in an amount up to $110.00 per day from the date of such failure or refusal. Plaintiff here is entitled to recover this penalty against the Defendants. In light of the Defendants' prolonged and unjustified refusal to comply with their fiduciary obligations under ERISA and provide the required documents to the Plan Beneficiary, Defendants should be assessed the maximum penalty as provided by the statute.

80.     On March 1, 2016, the Plan Beneficiary made demand on the Defendants to produce at least five distinct documents or categories of documents: (i) a complete and duly executed copy of the 2013 Master Plan, which is the document that governs the Plan Beneficiary's claim; (ii) any amendments to the Master Plan; (iii) the 2013 Summary Plan Description (hereinafter, "SPD"); (iv) any amendments and restatements to the SPD; and (v) the appeal procedures and other documents relating to the Plan Beneficiary's claim and showing the actual basis for the adverse benefit determination and methodology used in applying that basis. The statute provides that as to any single participant, each violation described in subparagraph (B) of 29 U.S.C. § 1132(c)(1) shall be "treated as a separate violation." From the date that the

requested documents became due from the Defendants, on March 31, 2016, through the date of the filing of this Complaint, it has been 186 days. Plaintiff seeks recovery of a civil penalty/sanction against the Defendants in the sum of 186 X 5 X $110.00 = $102,300.00. Plaintiff further seeks an award of future civil penalty/sanction against the Defendants until the date that the Defendants finally comply with their mandated ERISA disclosures.

## COUNT FOUR:

81.     **ALTERNATIVELY**, Plaintiff is entitled to a surcharge remedy under 29 U.S.C. § 1132(a)(3), for harm caused to the Plan Beneficiary and Plaintiff by the Defendants' breaches of their fiduciary duties (i.e., violations of 29 U.S.C. §§ 1104, 1105, and 1106 (b)(1)(d)) in an amount to be determined at trial.

## COUNT FIVE:

### Attorney's Fees

82.     Plaintiff is entitled to an award of attorney's fees on its ERISA claims. ERISA allows a "court in its discretion [to award] a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). *See Hardt v. Reliance Std. Life Insurance Co.,* 130 S.Ct. 2149, 2152 (2010). The Plan Beneficiary and/or the Plaintiff have presented claims to Defendants demanding payment for the value of the services described above, but Defendants have refused to pay Plaintiff. As a result of Defendants' failure to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action. Plaintiff is entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

## COUNT SIX:

### Negligent Misrepresentation

83.     Plaintiff contends that the Defendants' wrongful withholding of $1,150,138.80 of "allowed" Plan benefits from the Plan Beneficiary by precertifying benefits, then later denying the same under the guise of a contractual discount, constitutes negligent misrepresentation. Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others; (3) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.; (4) the plaintiff justifiably relied on the representation; and (5) the negligent misrepresentation proximately caused the plaintiff's injury. *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l,* 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991)).

84.     Defendants' co-fiduciary, BCBSTX, represented to VMCS that the Patient had benefits under the Plan; that the projected medical treatment was deemed medically necessary; that there were no applicable exclusions; and that the relevant medical services were precertified. *See Exhibit C.* In fact, BCBSTX gave the Plan Beneficiary confirmation of the Patient's precertification when it issued Certification Number 13137AAB40 to the Plan Beneficiary. The Plan Beneficiary relied on each of these representations and provided medical services to the Patient. However, since the Plan Beneficiary provided its medical services to the Patient, Defendants have alleged that a PPO discount or contractual limitation existed and withheld $1,150,138.80 in "allowed" claim benefits from the Plan Beneficiary. Despite the Plan Beneficiary's requests for the Defendants to produce the governing plan documents and to

provide an explanation for their alleged PPO discount or contractual limitation, Defendants have refused to produce said documentation and explanation.

85.     The representations and omissions made by the Defendants and their co-fiduciary, BCBSTX, were (i) made in the course of their business and in connection with a transaction in which they had a pecuniary interest; (ii) filled with false information provided for Plan Beneficiary's guidance; and, (iii) made without the exercise of reasonable care or competence in obtaining and/or communicating the information.

86.     The Defendants and their co-fiduciary, BCBSTX, are engaged in the business of providing and administering an employee insurance plan.  As the Plan is self-funded with a TPA, all Defendants have a pecuniary interest in this transaction. BCBSTX, as agent and co-fiduciary of the Plan and Plan Sponsor, represented to VMCS that Patient's benefits included an unspecified percentage of the Medicare Fee Schedule rate in excess of the Patient's $7,000 out-of-pocket maximum.   At the time of verification, BCBSTX did not provide the specific percentage of the Medicare Fee Schedule Rate required to be applied to determine the amount of reimbursement under the Plan.  This information was provided subsequently through the Report. The Plan Beneficiary detrimentally relied upon the representations from Defendants' co-fiduciary that the Patient had precertification and that the Plan Beneficiary would be compensated for its healthcare claim under the Plan when submitted. Based on the representations of the Defendants, VMCS provided costly medical services to the Patient. If VMCS was aware that the Defendants would withhold a large portion of the claim, or $1,150,138.80, from the Plan Beneficiary on the basis of a non-existent PPO contract, VMCS would not have provided such medical services to Patient.   Taken together, these acts and omissions of the Defendants and their co-fiduciary constitute negligently false representations.

87.    The Plan Beneficiary has been directly and proximately injured as a result of its reliance on the  negligently false representations of Defendants and their co-fiduciary in the sum of at least $1,150,138.80, or the amount of the claim that was wrongfully withheld from the Plan Beneficiary.  If the Plan Beneficiary had known that said representations were false, the Plan Beneficiary would not have agreed to provide the services to Patient, and the Plan Beneficiary would not have lost revenues of $1,150,138.80.   To date, neither the Plan Beneficiary nor Plaintiff have received any additional payment towards this balance of $1,150,138.80 from the Defendants or the Patient.   Plaintiff is entitled to relief from the Defendants for negligent misrepresentation in the sum of $1,150,138.80.

## COUNT SEVEN:

### Promissory Estoppel

88.    Plan Beneficiary substantially relied to its detriment on BCBSTX's promise that Patient's benefits under the Plan were verified, that the projected medical treatment was deemed medically necessary, that there were no applicable exclusions, that the proposed medical services were precertified, and that Patient's benefits included an unspecified percentage of the Medicare Fee Schedule rate in excess of the Patient's $7,000 out-of-pocket maximum.  Plan Beneficiary's reliance on the precertification of the medical services was foreseeable by BCBSTX.  Plan Beneficiary was damaged by such promises in the amount of at least $1,150,138.80.  BCBSTX was acting as agent and co-fiduciary of the Plan and Plan Sponsor at the time it made such promises to the Plan Beneficiary.

## COUNT EIGHT:

### Violations of Texas Insurance Code

89.     Plaintiff incorporates and re-alleges the allegations set forth above.

### i.     *Agency*

90.     At all times alleged herein that Defendants did an act or failed to do any act or duty, it is meant that Defendants' authorized, apparent, or ostensible agents, employees or representatives through BCBSTX did such act or failed to do such act or duty, thereby making Defendants liable under the doctrine of respondeat superior.  BCBSTX, through its employees, independent contractors, agents, officers, directors, managers, and representatives, were acting as the Defendants' "insurance verification agents," as that phrase is used in this pleading. However, these insurance verification agents were unfit agents.  Defendants were subjectively aware of the risks of hiring these unfit insurance verification agents; but, nevertheless, the Defendants proceeded with hiring these unfit insurance verification agents in conscious indifference to the rights, safety, and welfare of others, including, but not limited to, the Plan Beneficiary.

### ii.     *Overview*

91.     It is common practice and customary in the health care industry (hereinafter, "Industry") for health insurance companies, health plans, PPOs, etc., to issue insurance cards which have printed thereon pertinent contact information for the insurance verification agents of insurance companies to verify insurance coverage and benefit levels to hospitals.  Using these insurance cards, hospitals call insurance verification agents to verify the following important information:

> ➤ to confirm that an individual has benefits under a health plan/insurance policy;

> ➤ to discover what coverage and level of benefits are available to an individual; and

> ➤ to discover where the hospital should submit its claim for payment, if the hospital makes the financial decision to accept that particular coverage and level of benefits and provides the care in question to that individual/prospective patient.

92.     Hospitals have no other means of verifying coverage and benefits for a prospective patient other than calling an insurance verification agent.  Therefore, it is pivotal that the insurance verification agents hired by an insurance company or plan are well qualified, well trained, and well supervised individuals, who are capable of consistently communicating *clearly* and *accurately* all of the pertinent coverage and benefit information to the hospitals.  It is well known in the Industry that hospitals must be able to rely upon the coverage and benefit information provided by the insurance verification agents in making the very important financial decision of whether to provide expensive healthcare services to a prospective patient.  If the information provided by an insurance verification agent to the hospitals is *inaccurate* or *incomplete,* the hospitals can be severely damaged financially.  For decades Texas courts have taken judicial notice of these commercial realities, customs, and routine practices.  *See Hermann Hospital v. National Standard Ins.,* 776 S.W.2d 249, 254 (Tex. App.—Houston [1st Dist.] 1989, no writ)(*holding that hospitals can sue to recover the hospital's damages proximately caused by insurance companies' misrepresentations about the health coverage and benefits available to hospitals for their treatment of patients).*

93.     As pled above, BCBSTX precertified the Patient's benefits under the Plan and certified that the medical services were medically necessary; no exclusions applied; the benefit levels covered the amount of the projected healthcare costs; and that the Plan Beneficiary would be compensated for its services.  However, as pled above, the insurance verification agents of the

Defendants provided *inaccurate, incomplete* and *untimely information* to the Plan Beneficiary. In addition, the Defendants did not timely notify the Plan Beneficiary of whether the Defendants would accept or reject its claim.  These acts and failures to act constitute multiple violations of the Texas Insurance Code for which the Defendants are liable.

94.     Plaintiff, as successor of the Plan Beneficiary, brings this cause of action for injuries caused by the Defendants acts in violation of Texas Insurance Code §§ 541.051, 541.052,   541.056,   541.060(a)(1),   541.060(a)(2)(A),   541.060(a)(3),   541.060(a)(7);   and 542.046(a).

### iii.     *Violations of Texas Insurance Code*

95.     Plaintiff's cause of action arises out of the following violations of the Texas Insurance Code:

> ➤ Texas Insurance Code § 541.051, as follows:

> make, issue, or circulate or cause to be made, issued or circulated, an estimate, illustration, circular or statement representing with respect to a policy issued or to be issued the terms of the policy, benefits or advantages promised by the policy.

> ➤ Texas Insurance Code § 541.052, as follows:

> make, publish, disseminate, circulate, or place before the public or directly or indirectly causing to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance of a person in the conduct of the person's insurance business.

> ➤ Texas Insurance Code § 541.060, as follows:

> (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

> > (1) misrepresenting to a claimant a material fact or policy provision relating to coverage as issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

    (A) a claim with respect to which the insurer's liability has become reasonably clear;

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis of the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise of settlement of a claim;

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

➢ Texas Insurance Code § 541.056, as follows:

    (a)    an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

96.    The Plan Beneficiary has suffered actual damages as a result of these violations of the Texas Insurance Code in a sum of at least **$1,150,138.80,** for which the Plaintiff sues the Defendants.

97.    Defendants knowingly committed each of the foregoing acts with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices in violation of the Texas Insurance Code.

98.    Plaintiff would show that as the Defendants' conduct was committed "knowingly," Plaintiff is entitled to three (3) times the actual damages as provided under Texas Insurance Code § 541.152, plus reasonable attorney's fees, and costs of suit, all for which amount Plaintiff hereby seeks relief.

99.    Defendants' conduct as alleged above has made it necessary for Plaintiff to employ the undersigned attorney to represent him in this lawsuit, thus entitling Plaintiff to

recover its reasonable and necessary attorney's fees in this action under Tex. Ins. Code § 542.060(a)-(b) for which amount Plaintiff sues.

100.    Plaintiff would show that all conditions precedent have been performed, or excused or otherwise satisfied.    Plaintiff would further show that any technical notice requirement, if any existed, should be deemed waived and further excused since imposing such would cause an extreme hardship and such technical requirement is not an essential part of the contract.

101.    Additionally, if declaratory relief becomes necessary, Plaintiff requests that he be awarded his costs and reasonable and necessary attorney's fees on his behalf incurred pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Honorable Court issue judgment against the Defendants granting the Plaintiff the following relief:

1.    Plaintiff's actual damages in a sum of at least **$1,150,138.80**;

2.    Statutory penalties and surcharges as permitted by law and as plead for herein;

3.    Consequential and incidental damages in an amount to be determined at trial;

4.    Attorney's fees including attorney's fees in the event of an appeal of this lawsuit;

5.    Pre-judgment and post-judgment interest at the highest rates permitted by law;

6.    An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA;

7.    Plaintiff's costs of court; and

8.    All other relief, legal and equitable, to which the Plaintiff may be justly entitled.

Respectfully submitted,

by:   */s/ Jordin Nolan Kruse*
Jordin Nolan Kruse
State Bar No. 24003819
Federal Bar No. 370457
16826 Titan Drive
Houston, TX  77058
Telephone: (281) 480-4950
Fax: (281) 480-1190
Email: jordinnkruse@gmail.com

HAWASH MEADE GASTON NEESE & CICACK LLP

by:   */s/ Walter J. Cicack*
Walter J. Cicack
State Bar No. 05250535
2118 Smith Street
Houston, TX  77002
Telephone: (713) 658-9001
Facsimile: (713) 658-9011
Email:  wcicack@hmgnc.com

**ATTORNEYS FOR PLAINTIFF, NEIL GILMOUR, III,
solely in his capacity as Trustee of the Victory Medical Center
Southcross Unsecured Creditors' Grantor Trust and Victory
Parent Company Unsecured Creditors' Grantor Trust**